Ms. Kress. May it please the Court, my name is Elvira Kross, and I, along with Martin Gold, represent the defendant, Jeffrey Parkhurst. The government's goal was improper. Their evidence was incompetent. Their methods were impermissible. The result? An unfair trial polluted with errors and misconduct such that the verdict cannot stand. The government's improper goal was to attempt to argue to the jury that Mr. Parkhurst had the alleged propensity to commit the crime charged. That he was a child predator. Now, the government admits that their closing argument was somewhat inflammatory when they argued to the jury that Mr. Parkhurst hoped to manipulate children. That he preyed on the vulnerability of children. On cross-examination, the government violated black letter law when they used extrinsic evidence to try to prove prior instances of conduct. Now, they did so by reading off of emails that were never admitted into evidence and that were not the subject of any stipulation in an attempt to prove that Mr. Parkhurst, not that he was a liar, but that he was a child predator. Now, their actions went one step further into misconduct when on cross-examination of Mr. Parkhurst, the prosecutor got up and asked the question that every trial lawyer in America knows, you can't ask. She said, Mr. Parkhurst, would it surprise you that Detective Kester found Hunter and that Hunter was actually 15? Now, Detective Kester was the investigating detective and he was the government's purported expert but he wasn't on the stand. And Hunter, he was an individual that Mr. Parkhurst was alleged to have communicated with. Again, he wasn't on the stand. That question violated the... I notice that there's been no discussion in the briefs about Rule of Evidence 415. Was there any in the District Court about which of this material Rule 415 would support? I don't believe so, Your Honor. Okay. Thank you. As it is, that question violated Mr. Parkhurst's rights under the Confrontation Clause. Now, the government admits that that question was improper, but ignores the argument that it violated the Confrontation Clause. Defense counsel objected and the District Court ordered that question stricken and ordered the jury to disregard it. But a jury can't disregard that which keeps being repeated to them. Although juries are presumed to follow instructions, as this Court has held in Barber v. City of Chicago, sometimes common sense has to carry the day. A jury can't unhear that which is being repeated to them. And in rebuttal argument, the government got up and argued that very same stricken evidence that they had been told to disregard. They argued that the evidence showed that Mr. Parkhurst had been talking to Hunter, who was 15 years old. Again, in violation of the Confrontation Clause. This was misconduct. For its part, the District Court erred in allowing the government's purported expert, Detective Kester, the investigating detective, to testify to improper opinions. These were the so-called candy opinion and the so-called 18 or slightly older opinion. Now, in order for any expert to be allowed to testify, their testimony has to be helpful to the jury. Here, Detective Kester was improperly opining on the meaning of plain words and his opinion went impermissibly to Mr. Parkhurst's alleged intent. Namely, that Mr. Parkhurst knew that Detective Kester's undercover persona, Casey, was underage and that knowing that he was underage, Mr. Parkhurst attempted to entice him to have sex anyway. Not only was that testimony not relevant, it was improperly admitted over objection. I thought that was the whole heart of the case was whether he knew that he was enticing an underage person for the purpose of sex. That's correct. Or whether he was just having a casual conversation because he was lonely and was looking for a conversationalist, as he testified in his defense. That's correct, Your Honor, which is why it's that much worse that the expert purported to testify to that intent, which the government had to prove beyond a reasonable doubt, and which was for the jury to determine based on the plain meaning. The officer did not give an opinion about intent. The officer gave testimony about what customarily happens in these online chat rooms, right? No, Your Honor. The detective testified specifically to the words of this ad, to the specific words of Mr. Parkhurst's ad, and what those specific words meant in this context. In the context of, that they were, in which they were being used, in the online context based on his training and experience, that this is grooming behavior. No, Your Honor. His testimony went beyond any kind of grooming behavior testimony, specifically to what Mr. Parkhurst meant by his words. Because that testimony went to Mr. Parkhurst's specific intent, the cases which the government cites that generalize testimony about intent does not apply. As such, because of the district court's errors and the government's misconduct, Mr. Parkhurst respectfully requests that this court overturn his judgment of conviction. Thank you, Ms. Cooper. Mr. Walters. Good morning. May it please the court, counsel. Greg Walters on behalf of the United States. This was not a perfectly tried case. And I think it's an example of when, if the government over-tries a case, that there are potential issues that arise, that a two-day trial results in long briefs. As we admitted in our brief, the question specifically about Hunter, that he was discovered and he was 15 years old, was an improper question. Did we go forward and say, well, under the confrontation clause, no. But when it does implicate a trial right, such as the Sixth Amendment, and this question did, then the question is whether or not that error is harmless beyond a reasonable doubt. And so that's the standard we did apply in addressing that question. And we submit to the court that based on the evidence in the case, which the defense largely ignores in addressing the arguments, that the evidence in this case is very strong as to what exactly Mr. Parkhurst was intending to do, along with his admission that he assumed that who he was talking to was 14 or 15 years old, and that's in Exhibit 12B1, his own statement. How old did you think this person was that you were talking to? I assumed he was 15 or 16 years old. And then added to that, the text message about I may want to try to suck you. I've studied how not to hurt you. Take a shower, because I will know later if you are clean. Wanting to know whether or not, when his mother would be home. And then added to that, the substantial step of driving from Springfield to Decatur, that irrespective of that error, that that error, that question, which wasn't proper, was harmless. Judge Easterbrook, you had asked, if you're correct, we didn't address Rule 415 I should have said 414, that's what I meant. Did you address Rule 414? I did not. Okay. I think our point is that a defendant can't get on the stand and, on the one hand, put in evidence that appears favorable to him, but then on the other hand I have a different question. Yes, Your Honor. Was Officer Kester ever qualified to testify as an expert? He was, Your Honor. That is, there was a hearing under Rule 414? Oh, no. There was not a pre-hearing, Daubert hearing. So you think he was qualified, but the district judge did not rule that he was qualified to testify as an expert. Other than at trial when we offered him as an expert and the defense said no objection and the judge said Your appellate brief says that he was in part a lay fact witness and in part an expert. Yes. Was the jury told how to distinguish those different aspects? No, they were not. We have said in the Garrett case and some others that there is a serious risk of prejudice when a single person testifies as both a lay fact witness and an expert and that district judges must instruct the jury how to keep those roles straight. And yet you didn't ask the judge to do that. The judge seems not to have read our opinions about that subject. It is a pretty serious problem. I agree. When we tell district judges that they must do something, we expect them to do it. We expect the parties to help them draw their attention to it so they can do it. And the government failed in that regard and had the defense raise that issue. I know. We've got questions about what is plain error and what is harmless error, but it's a disappointment. Well, beyond that, Judge Easterbrook, they raised that argument for the first time in reply, and there are opinions repeatedly, United States v. York decided in 2009 and opinions leading up to that that it is a problem to seamlessly go back and forth. But in United States v. Moreland, which we cite in our brief, this court has also said telling the jury that a witness is both a lay witness and an expert witness and will be alternating between the two roles is potentially confusing. Absolutely, which is why district judges have to prevent this if they can and tell the jury what to do if they can't. And that just didn't happen here. Everybody seemed to just buzz by the subject. I don't disagree. I can't disagree, Judge. You're right. It wasn't addressed in the trial court, but for purposes of appeal, it also was not an issue that they raised in their opening brief, and they come back with their York argument in reply brief. And so had that issue been raised in the opening brief, we would have addressed it under the plain error standard since there was no objection to what could be viewed as seamlessly going between expert testimony and fact witness testimony. Although I would like to note that the opinion regarding the ad, the foundational question I think is clear that is this based on your experience and training. The objection to that was speculation, not reliability, not whether he had the ability to give that opinion, but based on speculation. And so that wasn't even a preserved objection. And then when it comes later on to the opinion about the candy evidence, that testimony about the communications between the undercover persona Casey and Mr. Parkhurst began at page 149 of the trial transcript and continues through page 186. And I think the context there is clear that what the witness is testifying about is his rational perception of what Mr. Parkhurst meant. And we see other examples of that beyond candy. Cut or uncut. He testified that he understood Casey or he was asking if Casey was circumcised or uncircumcised. No objection about that rational perception. Koester was asked what he understood to mean may like to try and suck you if you're interested. And he testified without objection. He was offering my undercover 15-year-old sex or about the showering. What did he understand that to mean? That he's going to see me naked, know if I'm clean or not. And Judge Sykes, you are correct that he did not testify to Mr. Parkhurst's ultimate intent when he testified about that ad. If we look at the exact testimony, he says regarding the age 18 or slightly older, the younger the better, what Detective Koester then says, that's a way for people to get around the Craigslist terms and conditions. He's not speaking. How does he know that? Was that part of his lay testimony, part of his expert testimony? Well, if you look at the foundational question right before that, Judge Easterbrook, it says, based on your education or experience in training, which they adjust. That's just hot air. My question, I have two parts of this question. One, how does he know that? Just talking, you know, your experience doesn't answer the how question. And the other is, was this lay testimony or expert testimony? This is one of the very things on which the jury might well be seriously confused. And if you're not, you know, you seem reluctant to tell me whether it's lay or expert testimony. No, not at all. I believe it's expert testimony based on the foundational question. The foundational question didn't ask him how he knows something. No, it did not, nor did the objection say foundation. It was speculation. Well, all right. So basically the answer in this record is we have no clue how he knows that. We have no clue whether it's right or wrong. There is testimony that preceded this when qualifying him as an expert, that he's been involved in 25 online investigations, that he's taken training in online investigations. For all we know, his training on online investigations is just full of rumor and innuendo. False facts, they are now called. Is there some way to test this against the world? That is, is there an empirical literature about this question? Any kind of scholarly literature about that question? I think no. Is there scholarly literature about somebody? George Orwell would call it double speak. Somebody gets on the stand and says a note requesting somebody over 18 means under 18. Okay, maybe people mean the opposite of what they say, but we need to have a reason to believe that that's true other than I say it's true. I agree, and I think part of it, though, is what I stated at the beginning, what is potentially problematic is over trying our case, because which in and of itself is not an error, but it does raise potential problems for error. I think it was apparent from the evidence as a whole what he was trying to do. I think it's apparent from the ad followed up with, can you keep a secret of what he was trying to do? When the undercover persona responds that I'm 15 years old, is that too young? And the response is, can you keep a secret? I understand that there was quite sufficient evidence in this case to convict without this other stuff, but it wasn't tried without this other stuff. No, it was not. And that's why we've made the argument, as I think we appropriately need to, that if there was error, it wasn't prejudicial under the plain error standard, or to the extent it was preserved, it was harmless error. Judge, again, I agree that not only should the district court have been clear about the roles of the witness, but the government has a critical role in this in making sure the case is tried correctly and well, and we did not do that. But ultimately, the question this court has to answer is, is it reversible error? Because if they want to use the prosecutorial misconduct framework for a lot of this, we're looking at first, was there impropriety, and then secondly, prejudice. And ultimately, we suggest to the court that the prejudice is not there. The question about Hunter was improper, but going even to the closing argument, wisdom would have told the government to completely stay away from the word Hunter and 15 years old based on the stricken testimony, but there was a basis beyond that stricken testimony for the government to address Hunter, based on confrontation with that exhibit beforehand on pages 358 through 359 of the transcript in which he was confronted with that exhibit. And it was a purported 15-year-old, and that purported 15-year-old's name was Hunter. And I think that's what counsel was referring to in rebuttal argument. And by the way, in response to the defense's argument that their exhibits, 13 through 69, were all communications with individuals over the age of 18. So it was in response to that argument, and wisdom would have said stay away. In part, that's why I asked about Rule 414, because it looked like some of this evidence might come in under Rule 414. But it wasn't discussed in the district court, hasn't been discussed here. But I also think there's another basis for its admissibility, Your Honor, which is he can't get on the stand and say, I have no interest. I'm looking for someone only over the age of 18 when there are exhibits, his own words that fly in the face of that. That's impeachment by contradiction, and that's completely appropriate. And when it's central to the case, it's appropriate to use extrinsic evidence. And so the judge's ruling, and Arnott clarifying it, there was confusion added on the one hand saying you can use the exhibits, you can confront him with the exhibits, which are themselves extrinsic, but on the other hand saying you can't use extrinsic evidence. Now they've asked to view this under the lens of prosecutorial misconduct. There has to be one of two theories. One, we violated the court's order. Well, we would say that Judge Bruce's statement following our cross-examination that we handled it properly goes a long way in showing that we didn't violate the court's order, whatever understanding of that order there was. And then, to be honest, I've not seen where an evidentiary argument is made under the context of prosecutorial misconduct.  And when the rules of evidence permit impeachment by contradiction, and when there's something central to the case, such as his statement that I have no interest in anyone under the age of 18, which goes to the heart of this case, then extrinsic evidence is admissible to contradict that. So this isn't some collateral matter of whether the car was yellow or red, and it's not even central to the case by which you can't use extrinsic evidence, but he is putting out there, central to the case, this is what I expected or this is what I wanted, someone over the age of 18. And by doing that, he left the jury with only his impression in the face of contradictory evidence, which, by the way, he was on notice of before he ever took the stand. And so, ultimately, were there problems in this case? Yes. But is it reversible error, and we suggest to the court, based on the weight of the evidence, his own words in his text messages, in his e-mails, and then even in his post-arrest statement when he said, I assumed he was 15 or 16, added with that the substantial step that despite the errors, the prejudice is not there, and we would ask you to affirm the judgment of the district court. If there are no other questions. Thank you, Mr. Walters. Thank you, Your Honors. Ms. Kraft. Your Honor, the judge admonished the government's use of extrinsic evidence. He specifically told the prosecutor, that's his answer. You may not prove it up with extrinsic evidence. Move on. Even if he later went on to say that it was appropriate, that was an error on his part. Now, the government argues that the expert testified both as a lay witness and as an expert witness, and we didn't address that in our opening brief. That's simply because there was no indication from the record that this individual was testifying as anything other than as an expert. And there were no instructions to the jury as to that regard. Now, case law tells us that when the investigating detective purports to testify to general intent, there's a risk of prejudice, because that is the individual who investigated that crime, and that's what this court held in U.S. v. Morris. Now, the government wants to try and say that this was just impeachment, but it's clear you cannot prove specific instances of conduct by extrinsic evidence. You have to live with the answer you get. That's what this court has held in Barber v. City of Chicago, and that is black-letter law, as stated in United States v. Warbrock. Even if there was another rule which would allow this kind of behavior, the government's own case, U.S. v. McGee, states, you can't use Rule 613 as an end run around the protections of Rule 608B. The government used those inadmissible out-of-court statements to say, not that Mr. Parkhurst was a liar, but that he was a child predator. That's not allowed. The government wants to get up here and say that Mr. Parkhurst wasn't allowed to get on the stand and testify a certain way. But what's clear, and what the government admits, is that they're not allowed to ask improper questions and pollute and infect the trial with misconduct such that the verdict is not fair. As such, we ask this court to reverse Mr. Parkhurst's judgment of conviction. All right. Thank you, Ms. Kras. Thanks to all the counsel.